OPINION OF THE COURT
Louis B. York, J.
Plaintiff Robert Half International, Inc. moves for summary judgment in the amount of $2,047.50 for money allegedly owed to it by defendant Jack Valentine, Inc., pursuant to a time sheet agreement. Plaintiff also asks that the court dismiss defendant’s counterclaims. For the reasons that follow, I *319 grant summary judgment in favor of plaintiff and dismiss defendant’s counterclaims.
On April 10, 1992, defendant, a small company, called plaintiff, a temporary employment service, in search of a bookkeeper. Plaintiff sent over a bookkeeper (the temp), whom defendant retained from April 10, 1992 until May 1, 1992. At the end of each week that the temp worked at defendant’s office, she presented a time sheet to James Fator, president of defendant, for his approval and signature. Each time sheet reiterated the terms of the agreement between plaintiff and defendant in a section clearly labelled "Conditions of Assignment.” The contract included the following provisions:
"2) accounttemps guarantees you satisfaction with our employee’s services by extending you a one-day (8 hours) guarantee period. If, for any reason, you are dissatisfied with the employee assigned to you, accounttemps will not charge for the first 8 hours worked, provided that accounttemps replaces the individual assigned. Unless you contact us before the end of the first eight hours, you agree that our employee assigned is satisfactory and further agree to these Conditions of Assignment * * *
"9) It is understood that under no circumstances will accounttemps be responsible for claims for work performed unless such claims are reported in writing to accounttemps by the undersigned within ninety (90) days after termination of the temporary assignment. ”
By signing, Fator expressly acknowledged that defendant was "bound by the terms of the Conditions of Assignment.”
Apparently, the temp’s work was unsatisfactory. According to defendant, the temp made so many mistakes in defendant’s computer records that defendant had to hire an accounting service to correct her work. For this reason, defendant ignored plaintiffs repeated demands that it be reimbursed for the temp’s wages. On September 8, in response to defendant’s refusal to pay, plaintiff instituted this action.
Defendant responded, on September 21, by writing to plaintiff. In its letter, its first written communication on this subject, defendant explained that it refused to pay the balance it owed plaintiff because the temp’s work was performed improperly. It further indicated that the temp’s incompetence had damaged defendant in the amount of $1,800. Defendant served an answer to the complaint, in which it denied liability and counterclaimed for damages of $1,800.
*320 The parties have devoted some time to arguing whether a special employment relationship existed between the employer and the temp. If such a relationship existed, defendant arguably would bear the responsibility of an employer to compensate its employees regardless of the quality of their performance. (See, East Coast Indus. v Becconsall, 60 Misc 2d 84, 86 [Nassau Dist Ct 1969]; Labor Law § 193.) However, the agreement between the parties expressly set forth their rights and duties regarding this matter. I conclude, therefore, that the agreement governs, and analyze the case accordingly.
One of the fundamental principles of contract law is that "[a]n individual who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of the other contracting party, is conclusively presumed to know its contents and to assent to them.” (Florentino Assocs. v Green, 85 AD2d 419, 420 [1st Dept 1982]; see, British W. Indies Guar. Trust Co. v Banque Internationale A Luxembourg, 172 AD2d 234 [1st Dept 1991].) In this case, the contract between the parties clearly provided for the situation at hand. Paragraph (2), which is set forth above, extended a one-day guarantee for the temp’s work. After that period, defendant was responsible for paying for the services of the temp regardless of defendant’s satisfaction with her performance. Accordingly, defendant is liable for the wages plaintiff paid to the temp.
Pursuant to paragraph (9) of the parties’ agreement, also set forth above, defendant had to notify plaintiff of any claims for damages in writing within 90 days of the termination of the temp’s assignment. The temp stopped working for defendant on May 1, 1992; defendant did not send plaintiff the requisite written notification of its claim until September 21, 1992— seven weeks, or 49 days, after the 90-day limitations period. Defendant’s failure to comply with the agreement bars its right to assert its counterclaim.
To explain its untimeliness, defendant states that in a conversation with plaintiff that took place before the 90-day term expired, it indicated that it had been damaged, and that it sent written notification to plaintiff as soon as it knew what the damages were. However, even if defendant did not know the exact amount of its damages within 90 days, it had an obligation under the contract to notify plaintiff in writing that a claim existed, and to do so before that period expired.
Therefore, I grant plaintiff summary judgment in the amount of $2,047.50, and dismiss the counterclaims. However, *321 I do not agree with plaintiff that interest should be calculated beginning April 10, 1992 — the day the temp began to work in defendant’s offices — as defendant did not owe plaintiff money at that time. Pursuant to CPLR 5001 (b), the interest shall be calculated as of the date the cause of action itself accrued. Where there are various accrual dates, the court may select a "single reasonable intermediate date.” (CPLR 5001 [b]; see, Delulio v 320-57 Corp., 99 AD2d 253, 255 [1st Dept 1984].) In this case, there were four bills issued — on April 10, 1992, April 17, 1992, April 24, 1992 and May 1, 1992. The interest, therefore, shall be calculated as of April 21, 1992, the midpoint of these dates.
I note that plaintiff also asked for summary judgment on the grounds that it had established an account stated. I disagree. To prove an account stated, a plaintiff must establish that a defendant received a bill and either accepted or failed to object to it within a reasonable time period. (See, Chemical Bank v Kaufman, 142 AD2d 526, 527 [1st Dept 1988].) Defendant’s assertion that it objected to the account would have raised a triable issue had we not granted summary judgment based on the contract.